UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
ANDREW R. VARA
UNITED STATES TRUSTEE, REGIONS 3 & 9
Maggie H. McGee, Esq
One Newark Center, Suite 2100
Newark, NJ  07102
Telephone: (973) 645-3014
Email:  Maggie.mcgee@usdoj.gov

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| | : Case No. 23-17710 CMG |
| In re: | : |
| | : |
| Judith Carr, | : Chapter 11 |
| | : |
| | : The Hon. Christine M. Gravelle |
| Debtor. | : |
| | : Hearing Date: |

**OBJECTION OF THE UNITED STATES TRUSTEE TO DEBTOR'S MOTION TO APPROVE COMPROMISE AND PAYMENT OF THE CLAIMS OF JERSEY SHORE ANESTHESIOLOGY ASSOCIATION AND NEW CENTURY FINANCIAL SERVICES, INC.**

Andrew R. Vara, United States Trustee for Regions 3 and 9 ("U.S. Trustee"), by and through his undersigned counsel, hereby objects to the Debtor's Motion to Approve Compromise and Payment of the Claims of Jersey Shore Anesthesiology Association ("JSAA") and New Century Financial Services, Inc ("NCFS") ("Compromise Motion"), and in support thereof, states as follows:

## INTRODUCTION

1.     This Court has jurisdiction to hear and determine this Objection.

2.     Pursuant to 28 U.S.C. § 586(a)(3), the U.S. Trustee is charged with administrative oversight of the bankruptcy system in this District.  Such oversight is part of the U.S. Trustee's overarching responsibility to enforce the laws as written by Congress and interpreted by the courts.  *See United States Trustee v. Columbia Gas Systems, Inc. (In re Columbia Gas Systems,*

*Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing"

under 11 U.S.C. § 307 which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S.,*

*Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a

"watchdog").

3.      Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on the issues

raised by this Objection.

## BACKGROUND AND RELEVANT FACTS

**A.      The Bankruptcy Case.**

4.      On September 1, 2023 (the "Petition Date"), Judith Carr (the "Debtor") filed a

voluntary petition for relief under Chapter 11 of title 11, United States Code.  ECF No. 1.

5.      The Debtor owns a single-family home located at 23 Silverleaf Way in

Manalapan, Monmouth County, New Jersey (the "Property").  ECF No. 16.

6.      On January 26, 2024, the Debtor filed a Motion Pursuant To Sections 105(A) And

363 of the Bankruptcy Code and Bankruptcy Rules 2002 And 6004 for an Order Authorizing the

Sale of Debtor's Interest in Real Property Commonly Known As 23 Silverleaf Way, Manalapan,

Monmouth County, New Jersey Free and Clear of Liens With Valid Liens to Attach to Proceeds

of Sale ("Sale Motion"), seeking to sell the Property to Galina Belokon for $1,100,000.   The

Property is subject to a first priority lien in the approximate amount of $1,522,775.66.

7.      Multiple objections were filed to the Sale Motion. ECF Nos. 33, 34, and 35.  All

of the objections were either resolved or overruled and an order approve the Sale Motion was

entered on April 10, 2024.

8.      At the hearing on the Sale Motion, the Debtor proposed to reserve an amount to

pay the claim of JSAA, an unsecured creditor pending a motion to approve a compromise of the

claim.  The U.S. Trustee questioned this proposal on the grounds that the Debtor could not pay

one unsecured claim when other unsecured claims were not being paid.

9.      The Debtor identified 18 unsecured claims on her Schedule E/F totaling $18,807.

ECF No. 16 at 19.  Neither JSAA nor NCFS appear to have been identified on either Schedule D

or Schedule E/F.  ECF No. 16.  The sale order provides, in relevant part, that the Sale Motion is

granted, and the Debtor shall hold $4,600 in escrow pending the outcome of a motion to

compromise the claims and liens of JSAA and NCFS.  ECF No. 44 at 6.

10.      On March 25, 2024, the Debtor filed a Motion to Modify the Claim of JSAA.

ECF No. 43.  In the Motion to Modify, the Debtor objected to the claim on the grounds that the

claim was not a secured claim, as indicated, but an unsecured claim.  ECF No. 43-1.  JSAA filed

a proof of claim alleging a security interest in the Debtor's assets. See Claims Register, No. 7.

11.      The Claims Register does not reflect a proof of claim on behalf of NCFS.

12.      The docket reflects that JSAA and NCFS have judgments against the Debtor. ECF

Nos. 48 and 44, respectively.   The Debtor alleged in the Motion to Modify that the claim of

JSAA is unsecured as the prior valid liens on the Property exceed its value.  ECF No. 43-1.

13.      The Debtor concedes that the holder of the first priority mortgage secures an

indebtedness in the amount of $1,586,951 against the Property.  *Id.* Thus, both JSAA and NCFS

appear to be under secured creditors.

14.      The Compromise Motion states that "[t]he Debtor, through her undersigned

counsel, has negotiated an agreement pursuant to which she will pay the sum of $4,600 in full

satisfaction of the three claims of NCFS and JSAA to be divided among NCFS and JSAA as they

deem appropriate."  ECF No. 49-1 at 2.

15.     The Compromise Motion further states that the satisfaction of the claims "will be funded by the purchaser of the Property who increased her sale offer provided the compromise of the claims and liens of JSAA and NCFS is approved by the Court." *Id.*

16.     No briefing or supporting authority are provided in the Motion.

## APPLICABLE LAW AND ANALYSIS

### A.     Compromises Proposed under 9018 must be Fair and Equitable.

17.     On March 25, 2024, the Debtor filed a Motion to Modify the Claim of Jersey Shore Anesthesiology Associations Inc. ("JSAA").  ECF No. 43.  In the Motion to Modify, the Debtor objected to the claim on the grounds that the claim was not a secured claim, as indicated, but an unsecured claim.  ECF No. 43-1.

18.     Although unstated, the Debtor likely seeks to compromise the claims of NCFS and JSAA under Federal Rule of Bankruptcy Procedure 9019 ("Fed.R.Bankr.Proc. 9019") which provides, in relevant part, "[on] motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."  Fed.R.Bankr.Proc. 9019.  Settlements are favored but require bankruptcy court examination and approval.  *In re Nutraquest, In*c., 434 F.3d 639, (3rd Cir. 2006). To approve a compromise, the bankruptcy court must find that the compromise is both "fair and equitable."  *Id.*   In determining whether a compromise is fair and equitable, the Third Circuit applies a four part test, which test includes the following four factors; 1) the probability of success in litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (d) the paramount interest of the creditors and a proper deference to their reasonable views.  *Id.* at  644.  Under the "fair and equitable" standard, courts look to the fairness of the settlement to other persons, i.e., the parties who did not settle.  *Id.* a

645. The court must act independently for the benefit of all creditors. *Id. citing In re Boxton & Providence R.R. Corp,* 673 F.2d 11, 13 (1st Cir. 1982).

19.    The Debtor does not even allege that the compromise is fair nor equitable and cites no authority to support it.  Most importantly, the Debtor has failed to address the fairness of this settlement on other unsecured creditors, who are not being paid, and may well not be paid anything, ever.   Based thereon, the Motion should be denied until all relevant factors are properly addressed.  Regardless of the Debtor's failure to address the legal foundations underpinning the Compromise Motion, as set forth below, the compromise is neither fair nor equitable as the Debtor seeks to restructure the priority provisions of the Bankruptcy Code by proposing the settlement which seeks to make distributions to unsecured creditors outside of a plan of reorganization.

**B.    The Compromise Cannot Be Approved Because it is not Fair and Equitable.**

20.    In *Czyzewski v. Jevic Holding Corp.*, 137 S.Ct. 973 (2017), the United States Supreme Court struck down a proposed structured dismissal which violated the priority distribution provisions of the Bankruptcy Code.  In *Jevic*, the proposed structured dismissal deprived creditors with WARN claims with a distribution while allowing lower priority general unsecured claims to be paid in full.  *Id.*  The Supreme Court held that Bankruptcy courts may not approve structured dismissals that provide for distributions that do not follow ordinary priority rules without the consent of affected creditors.  *Id.* at 983-987.  As the Supreme Court stated the issue "[c]an a bankruptcy court approve a structured dismissal that provides for distributions that do not follow ordinary priority rules without the affected creditors' consent? Our simple answer to this complicated question is 'no.'"  *Id.*

21.    The priority system of distributions under the Bankruptcy Code is fundamental to the operation of bankruptcy cases.  *Jevic* at 984.  As the Supreme Court recognized, when courts

have deviated from the priority rules, courts have found "significant Code-related objectives that the priority-violating distributions serve." In these types of cases, including "first-day" wage orders, "critical vendor" orders and orders allowing "roll-ups," courts have generally found that the distributions at issue would "enable a successful reorganization and make even the disfavored creditors better off." *Id.* at 945 (citations omitted).

22.     Here, the Debtor will likely not reorganize at all as her sole asset is being sold for less than the amount of the liens on the Property and there are no other non-exempt assets to liquidate for the benefit of unsecured creditors.   Hence, there are no Code-related objectives to be served here.  Like the structured dismissal in *Jevic*, the priority violating compromise proposed here does not preserve the debtor as a going concern, does not make disfavored creditors better off, and does not promote the possibility of a confirmable plan. *Id.* at 986.   If this compromise is to be approved, the only unsecured creditors to be paid are two previously unidentified creditors, one of which did not file a proof of claim.  The Compromise Motion says nothing about the 18 identified unsecured creditors in Schedule E/F.  This distribution directly violates 11 U.S.C. § 507 which sets for the priority of distributions under the Code.  The Debtor has failed to address how the other unsecured creditors are to be treated in any future proceedings and failed to address the inequity of the distribution proposed in the compromise.

23.     This compromise is essentially a "sub rosa" plan which the Supreme Court specifically identified as a prohibited use of the priority violating provisions disallowed by numerous bankruptcy courts.  *Id. at 986, citing, In re Braniff Airways, Inc.,* 700 F.2d 935, 940 (5th Circuit 1983) (prohibiting an attempt to "short circuit the requirements of Chapter 11 for confirmation of a reorganization plan by establishing the terms of the plan sub rosa in connection with a sale of assets."); *In re Lionel Corp.* 722 F.2d 1063, 1069 (2d Circuit 1983)( reversing a bankruptcy court's approval of an asset sale after holding that § 363 does not "grant the

bankruptcy judge *carte balance* or swallow up chapter 11 safeguards'); *see also, In re Fryar,* 570 B.R. 602 (Bankr. E.D. Tenn 2017) (post-*Jevic,* the Bankruptcy Court denied a motion to approve a settlement which did not follow the ordinary priority rules and did not have the consent of the affected creditors and no Code-related objectives were being served that were of such significance as to justify the deviation).  If the claims subject to the Compromise Motion were to be paid under a plan with sufficient disclosure, the U.S. Trustee's position may differ. However, for the reasons stated above, the Compromise Motion must be denied.

### C.  Compromise Violates Federal Rule of Bankruptcy Procedure 3021

24.     Federal Rule of Bankruptcy Procedure 3021 provides, in pertinent part, that "after a plan is confirmed, distribution shall be made to creditors whose claims have been allowed, to interest holders whose interest have not been disallowed, and to indenture trustees who have filed claim under Rule 3003(c)(5) that have been allowed."  Bankruptcy Rule 3021 does not allow distributions to creditors until a Chapter 11 plan is confirmed, unless extraordinary circumstances exist. *See e.g., In re Conroe Forge & Manufacturing Corporation*, 82 B.R. 781 (Bankr. W.D. Penn 1988).  The Debtor has cited no extraordinary circumstances justifying the payment of only two of 18 unsecured creditors.

### CONCLUSION

WHEREFORE, considering the foregoing, the U.S. Trustee respectfully requests that the Compromise Motion be denied, and that the Court grant such further relief as is just and equitable.

Respectfully submitted,

ANDREW R. VARA
UNITED STATES TRUSTEE
REGIONS 3 & 9

By:     */s/Maggie McGee*
        Maggie McGee

Trial Attorney

Dated:  May 28, 2024